IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHELLE LECHUGA, individually, and on behalf of all others similarly situated,

    Plaintiff,

v.

SPARK ENERGY, INC.,

    Defendant.

Case No. 1:19-cv-02176

## CLASS ACTION COMPLAINT

NOW COMES Plaintiff, MICHELLE LECHUGA, individually, and on behalf of all others similarly situated, through counsel, SULAIMAN LAW GROUP, LTD., complaining of Defendant, SPARK ENERGY, INC., as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking damages as well as injunctive relief for the Defendant's violations of Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

3. Venue in this district is proper under 28 U.S.C. § 1391(b)(2).

### PARTIES

4. MICHELLE LECHUGA ("Plaintiff") is a natural person, over 18-years-of-age, who at all times relevant resided in this District.

5. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

1

6. SPARK ENERGY, INC. ("Defendant"), through its subsidiaries, operates as an independent retail energy services company in the United States. It operates through two segments, Retail Natural Gas and Retail Electricity. The company is involved in the retail distribution of natural gas and electricity to residential, commercial, and industrial customers. As of December 31, 2016, it operated in 90 utility service territories across 18 states and the District of Columbia, and had approximately 774,000 residential customer equivalents. Spark Energy, Inc. was founded in 1999 and is headquartered in Houston, Texas. Spark Energy, Inc. is a subsidiary of Retailco, LLC.

7. Defendant is a "person" as defined by 47 U.S.C. § 153(39).

## GENERAL ALLEGATIONS

8. Defendant develops marketing campaigns using a combination of sales channels, with an emphasis on door-to-door marketing and outbound telemarketing.[1]

9. Defendant's vendors are essential to their telemarketing and door-to-door sales activities.

10. Defendant's ability to increase revenues depends significantly on their access to high-quality vendors.

11. If they are unable to attract new vendors and retain existing vendors to achieve their marketing targets, their growth will be materially reduced.

12. Defendant is subject to liability under the TCPA for actions of their third party vendors who are engaging in outbound telemarketing efforts on their behalf.

---

[1] http://ir.sparkenergy.com/static-files/bdcacc37-db17-4ec7-b09f-36e97077cea7

13. Upon information and belief, Defendant's outbound telemarketing efforts include the use of an automated telephone dialing system ("ATDS") to solicit energy services.

14. The Federal Trade Commission ("FTC") has held that a basic function of an ATDS is the ability to dial thousands of numbers in a short time period.

15. An ATDS allows its telemarketing agents – who, upon information and belief, are paid an hourly wage – to only communicate with consumers who answer their phone.

16. Consequently, Defendant shifts the burden of wasted time to consumers with unsolicited calls and messages.

## **FACTUAL ALLEGATIONS**

17. At all times relevant, Plaintiff was the sole operator, possessor, and subscriber of the cellular telephone number ending in 2896.

18. At all times relevant, Plaintiff's number ending in 2896 was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

19. At all times relevant, Plaintiff was financially responsible for her cellular telephone equipment and services.

20. On or before February 22, 2018, Plaintiff started to receive unsolicited telephone calls from Defendant.

21. These calls were made in an attempt to market Defendant's electric services to Plaintiff.

22. On numerous occasions, Plaintiff answered. Each time, Plaintiff experienced distinctive noticeable pause prior to being connected to Defendant.

23. Plaintiff informed Defendant that she was not interested in Defendant's electric services before asking that Defendant stop calling.

24. Other times, Plaintiff was met with prerecorded messages soliciting Defendant's electric services. Plaintiff simply hung up these phone calls.

25. In spite of Plaintiff's requests that Defendant stop calling, Defendant continued to place calls to Plaintiff's cellular telephone no less than twice a month.

26. Each time, Defendant used caller ID spoofing to make it appear that these phone calls were placed from local numbers: (630) 358-6219, (815) 740-1122 and (773)928-8910.

27. In total, Defendant placed or caused others to place no less than 20 unsolicited phone calls to Plaintiff's cellular telephone.

28. At no time did Defendant obtain consent from Plaintiff to receive robocalls or pre-recorded messages to her cellular telephone number ending in 2896.

29. Defendant's unsolicited telemarketing phone calls resulted in aggravation that accompanies unsolicited telephone calls, anxiety, diminished value and utility of telephone equipment and telephone subscription services, emotional distress, increased risk of personal injury resulting from the distraction caused by the phone calls, intrusion upon and occupation of Plaintiff's cellular telephone capacity, invasion of privacy, loss of battery charge, loss of concentration, mental anguish, nuisance, the per-kilowatt electricity costs required to recharge her cellular telephone as a result of increased usage of her telephone services, and wasting Plaintiff's time.

## CLASS ALLEGATIONS

30. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

31. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) individually, and on behalf of all others similarly situated ("Putative Class") defined as follows:

> *All persons within the United States: (a) to whom Defendant and/or a third party acting on Defendant's behalf, made one or more non-emergency phone call(s); (b) promoting Defendant's products or services; (c) to their cellular telephone number; (d) using an automated telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of filing this Complaint through the date of class certification.*

32. The following individuals are excluded from the Putative Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Putative Class; (5) the legal representatives, successors or assigns of any such executed persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

**A. Numerosity:**

33. The exact number of members of the Putative Class are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable.

34. On information and belief, Defendant made phone calls to hundreds of consumers who fall into the definition of the Putative Class.

35. Members of the Putative Class can be objectively identified from records of Defendant and any affiliated marketers to be gained in discovery.

**B. Commonality and Predominance:**

36. There are many questions of law and fact common to the claims of Plaintiff and the Putative Class, and those questions predominate over any questions that may affect individual

5

members of the Putative Class. Common questions for the Putative Class include, but are not necessarily limited to the following:

    A.    Whether Defendant used an "automatic telephone dialing system" as defined by TCPA and applicable FCC regulations and orders;

    B.    Whether Defendant had prior express consent to contact Plaintiff and the members of the Putative Class when it placed, or caused to be placed phone calls to their cell phones using an automatic telephone dialing system;

    C.    Damages, including whether Defendant's violations were performed willfully or knowingly such that Plaintiff and the members of the Putative Class are entitled to treble damages.

**C. Typicality.**

37. Plaintiff's claims are typical of members of the Putative Class because Plaintiff and members of the Putative Class are entitled to damages as result of Defendant's conduct.

**D. Superiority and Manageability.**

38. This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

39. The damages suffered by the individual members of the Putative Class will likely be relatively small, especially given the burden and expense required for individual prosecution.

40. By contrast, a class action provides the benefits of single adjudication, economies of scale and comprehensive supervision by a single court.

41. Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

**E. Adequate Representation.**

42. Plaintiff will adequately and fairly represent and protect the interests of the Putative Class.

43. Plaintiff has no interests antagonistic to those of the Putative Class, and Defendant has no defenses unique to Plaintiff.

44. Plaintiff has retained competent and experienced counsel in consumer class action litigation.

## **CLAIMS FOR RELIEF**

### **COUNT I:**
### **Violation of 47 U.S.C. § 227** *et seq.*
### **(On behalf of Plaintiff and the Members of Putative Class)**

45. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

46. Among other things, the TCPA prohibits certain calls to wireless and residential numbers unless the caller has the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A).

47. Under the TCPA Consent Rules, some types of calls require prior express *written* consent, while other types of calls do not require that the consent be in writing.

48. "Prior express *written* consent" is required for:

- All telemarketing/promotional calls/texts made using an ATDS placed to wireless numbers, and

- All artificial or prerecorded telemarketing/promotional voice calls to wireless and residential numbers.[2]

---

[2] 47 C.F.R. §§ 64.1200(a)(2), (a)(3).

49. The TCPA Consent Rules define "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an ATDS or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

50. Defendant placed or caused to be placed no less than 20 non-emergency calls without the prior express consent of Plaintiff to Plaintiff's cellular telephone number ending in 2896 utilizing an ATDS without Plaintiff's prior express written consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

51. Upon information and belief, based on the noticeable pause Plaintiff experienced, Defendant employed an ATDS to place calls to Plaintiff's cellular telephone.

52. Upon information and belief, the ATDS employed by Defendant transfers the call to a live representative once a human voice is detected, hence the clear pause.

53. Upon information and belief, based on the prerecorded messages received, Defendant employed an ATDS to place calls to Plaintiff's cellular telephone.

54. Upon information and belief, the ATDS employed by Defendant has the *capacity* – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.

55. Upon information and belief, Defendant has no database to maintain and update consumers' contact preferences and consent to call them.

56. Defendant has publicly acknowledged potential liability stemming from actions of third party vendors in violation of the TCPA; yet continues to employ these third party vendors to

engage in outbound telemarketing efforts on their behalf to increase revenues at consumers' expense.[3]

57. As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the members of the Putative Class are entitled to receive $500.00 in damages for each such violation.

58. As a result of Defendant's *knowing and willful violations* of 47 U.S.C. § 227 *et seq.*, Plaintiff and the members of the Putative Class entitled to receive up to $1,500.00 in treble damages for each such violation.

**WHEREFORE**, Plaintiff, on behalf of herself and the members of the Putative Class, requests the following relief:

- A. an order granting certification of the proposed class, including the designation of Plaintiff as the named representatives, the appointment of the undersigned as Class Counsel, under the applicable provisions of Fed. R. Civ. P. 23;
- B. an order finding that Defendant violated 47 U.S.C. § 227 *et seq.*;
- C. an order enjoining Defendant from placing or causing to place violating calls to consumers;
- D. an award damages of $500.00 to Plaintiff and the members of the Putative Class for each such violation;
- E. an award treble damages up to $1,500.00 to Plaintiff and the members of the Putative Class for each such violation; and
- F. an award of such other relief as this Court deems just and proper.

---

[3] http://ir.sparkenergy.com/static-files/bdcacc37-db17-4ec7-b09f-36e97077cea7

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

DATED: March 28, 2018 Respectfully submitted,

**MICHELLE LECHUGA**

*/s/ Joseph S. Davidson*

Joseph S. Davidson
Mohammed O. Badwan
**SULAIMAN LAW GROUP, LTD.**
2500 South Highland Avenue
Suite 200
Lombard, Illinois 60148
+1 630-575-8181
jdavidson@sulaimanlaw.com
mbadwan@sulaimanlaw.com